8:25-cv-01305-MSS-NHA

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION**

Kristine Lee Hardwick-Lewis, as Trustee of the KLH Revocable Living Trust,
 Plaintiff,
 v.

 John C. Hanrahan, Brennan Ferguson, Audrey J. Dixon, John A. Ansell III a.k.a. John Ansell,
UMB Bank, N.A., John Mariner Kemper (in official capacity), Michelle Masoner, William Galarza
(individually and d/b/a Galarza Law, PA), Harvey West Auctioneers, LLC, Brock & Scott, PLLC,
McMichael Taylor & Gray, LLC, Arvest Bank Kevin Sabin (in official capacity), Arvest Mortgage
Peter Boomer (in official capacity)  and Truist Bank Bill Rogers (in official capacity)
 Defendants.

**CIVIL ACTION COMPLAINT**
 **COMPLAINT UNDER RICO, 18 U.S.C. §§ 1961–1964, FOR INJUNCTIVE RELIEF AND
DAMAGES**

**TABLE OF CONTENTS**

I. Preliminary Statement
 II. Parties, Jurisdiction, and Venue
 III. Factual Background
 IV. Count I – Pattern of Racketeering Activity and Civil RICO Violation (18 U.S.C. § 1962(c))
 V. Count II – Conspiracy to Commit Racketeering (18 U.S.C. § 1962(d))
 VI. Count III – Deprivation of Property Without Due Process Under Color of Law (42 U.S.C. §
1983)
 VII. Count IV – Fraudulent Invocation of Deed of Trust as Legal Authority for Judicial Sale
 VIII. Count V – Judicial Facilitation of Racketeering and Due Process Violations
 IX. Count VI – Multistate Pattern and Governmental Indifference
 X. Prayer for Relief

**I. PRELIMINARY STATEMENT**

This action is both legally grounded and deeply personal. Plaintiff Kristine Lee Hardwick-Lewis
brings this case as the Trustee of the KLH Revocable Living Trust and as a widow and mother
who has suffered direct harm from the coordinated fraud alleged herein. Plaintiff's late husband
was posthumously targeted by attorneys and banks who knowingly used his name in legal
proceedings despite clear documentation of his death and the lawful transfer of property into
trust. These actions led to unlawful seizure of trust-held property, displacement, and trauma for
the Plaintiff and her family.

Plaintiff's personal history is not without painful precedent. As a child, she witnessed her parents
lose the family home through a judicial sale process that fractured relationships and left lasting
emotional scars. The events underlying this action reopened those wounds, not just as a litigant,



but as a woman seeking justice for her family, her deceased loved ones, and for others who have suffered under similar abuse of the legal system.

**Plaintiff does not bring this action for vengeance or mere compensation. She seeks justice—through federal indictment and incarceration where appropriate—not only to address the personal harm inflicted, but to ensure that these predatory, systemic abuses are never repeated against another American family.**

This action arises from a deliberate, multi-state racketeering enterprise executed under color of law and through abuse of state civil procedures to deprive Plaintiff of trust-owned property through abuse of legal process and without lawful procedural authority. The Defendants, comprising attorneys, law firms, auctioneers, and financial institutions, have engaged in systemic mail fraud, wire fraud, fraudulent conveyances, obstruction of justice, and conspiracy in order to execute unlawful judicial sales of residential real property. These actions were taken despite known jurisdictional defects, and in several instances, involved falsified or procedurally invalid filings, suppression of trust ownership, and theft of surplus funds.

This action does not seek to reverse or nullify any state court judgment. Plaintiff does not challenge the merits of any prior ruling, but instead seeks to expose and remedy a coordinated pattern of racketeering activity involving fraud, obstruction of process, and deprivation of federal rights under color of law. This case arises independently under federal law and the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1961–1964), and is not barred by the Rooker-Feldman doctrine.

Plaintiff seeks judicial recognition of these abuses under the Racketeer Influenced and Corrupt Organizations Act (RICO), including criminal referral and injunctive relief, to prevent further violations and set precedent against property-based racketeering carried out under the pretense of lawful civil proceedings.

## II. PARTIES, JURISDICTION, AND VENUE

**Applicable Statutory Authorities:** This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 18 U.S.C. § 1964(c) (civil RICO). Venue is proper under 28 U.S.C. § 1391(b). Plaintiff's due process claims are grounded in 42 U.S.C. § 1983, and Maryland trust-related claims are supported by Md. Code, Estates and Trusts §§ 14.5-901 to 14.5-906 (regarding trust certification and privacy protections). Florida statutory support for trust privacy and enforcement includes Fla. Stat. § 736.0105(2)(s) and § 736.1017. These statutes collectively support Plaintiff's standing, jurisdictional basis, and claim for relief.

**Plaintiff: Kristine Lee Hardwick-Lewis**, Trustee of the KLH Revocable Living Trust, lawfully domiciled in Florida, asserting legal standing based on ownership and fiduciary obligations over trust property wrongfully seized through unlawful judicial sales in Maryland and Florida. Plaintiff is domiciled in the State of Florida.
 **Defendants:** As previously identified, the named parties include attorneys, auctioneers, and bank officers actively participating in the racketeering scheme described herein.

This Court has jurisdiction under 28 U.S.C. § 1331 and 18 U.S.C. § 1964(c), as this action arises under federal RICO statutes. Venue is proper under 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to these claims occurred in this District and other coordinated acts across Florida and Maryland.

## III. FACTUAL BACKGROUND

Plaintiff retains certified mail receipts, tracking confirmations, and signed green cards verifying that each named bank and legal firm received notice of the KLH Revocable Living Trust and the relevant decedent status prior to any filings initiating or purporting to initiate judicial action concerning property disposition. This documentation demonstrates that Defendants had actual and constructive knowledge of the trust's legal interest and proceeded in conscious disregard of that notice.

Defendants Arvest Bank, Arvest Mortgage, and Truist Bank retained Brock & Scott, PLLC as asset seizure counsel to carry out extrajudicial takings of trust-owned property despite having received certified notice of the trust's interest and the borrowers' deaths. Acting as legal enforcers within a coordinated enterprise, Brock & Scott engaged in a pattern of fraudulent filings, material misrepresentations, and procedural circumvention designed to deprive the Plaintiff of constitutionally protected property rights under color of law.

In both Prince George's County, Maryland, and Manatee County, Florida, Plaintiff was not a signatory on the promissory note or mortgage loan agreements. The sole obligor listed in both matters was Plaintiff's deceased husband. However, Plaintiff's name was listed on the property deed for both homes, and she held a legal interest in the real property as a co-owner and surviving spouse. Despite this, banks and foreclosure counsel included Plaintiff by name in the proceedings, despite her not being a signatory to the note or loan, and deliberately failed to recognize her legal capacity as trustee of the trust, instead prosecuting judicial sales solely in the name of a deceased individual. These actions reflect a calculated attempt to unlawfully seize property out from under the rightful titleholder by ignoring deed ownership, bypassing probate, and suppressing trust interest notifications.

Plaintiff further alleges that in Prince George's County, Maryland, attorney John Ansell (not John A. Ansell III as listed with the Maryland Bar) fraudulently represented Plaintiff's deceased husband as being alive in order to proceed with an unlawful judicial property sale. This included submitting filings and government forms where a name was typed to appear as an authorized representative of the deceased, despite no open probate, no lawful personal representative, and full knowledge that Plaintiff was the surviving spouse and lawful heir. These misrepresentations were made knowingly and with intent to deceive the court and defraud the estate, and occurred within 30 days after Plaintiff's husband passed away on October 1, 2022. Specifically, the false representation was signed and submitted on October 31, 2022—just one day after Plaintiff attended a professional memorial recognizing her late husband's contributions to his field. The event took place at the Lincoln Theater in Washington, D.C. on October 30, which would have been his birthday.

These actions were not only premature and improper from a legal standpoint, but predatory in nature, taking advantage of Plaintiff's grieving period and emotional vulnerability. Although the KLH Revocable Living Trust had not yet been established at the time, Defendants later continued to pursue proceedings without acknowledging the trust after being notified of its existence and Plaintiff's role as trustee. This ongoing failure to recognize the trust's legal interest constitutes a knowing and deliberate act of procedural fraud and concealment. Plaintiff possesses documentary evidence confirming that these fraudulent actions were committed and further asserts that these filings constitute criminal fraud on the court and misuse of legal process under color of law.

All Defendants—including but not limited to Brock & Scott, PLLC; McMichael Taylor & Gray; and the involved lender entities—were timely and properly notified in early to mid-October 2024 that the subject properties were held by the KLH Revocable Living Trust, and that Plaintiff Kristine Lee Hardwick-Lewis was the acting Trustee. Written notice was provided directly to the attorneys of record and to the financial institutions before any filings initiating or purporting to initiate judicial action concerning property disposition were scheduled or executed.

Plaintiff further alleges that Defendant UMB Bank operated in conjunction with related servicing entities, including Rushmore Loan Management Services (also known as Rushmore Servicing), which is a wholly owned subsidiary of Mr. Cooper Group. Plaintiff issued certified notice not only to UMB Bank but also directly to Rushmore Servicing and Mr. Cooper Group. These parties are financially and operationally interrelated and functioned as part of the same servicing enterprise. The existence of multiple interlocking entities allowed Defendants to diffuse liability, obscure responsibility, and facilitate judicial property takings through a deliberately layered corporate structure. Plaintiff reserves the right to amend this Complaint to name additional related entities if discovery reveals further coordination or direct involvement.

Despite having full and timely knowledge of the trust's ownership and the identity of its trustee, Defendants proceeded to file and prosecute judicial sale actions as if the trust did not exist. In doing so, they refused to send notice to the trust, deliberately misrouted service to individuals or attorneys with no standing or active representation authority, and continued moving forward with property transfers while motions challenging subject matter jurisdiction remained pending and unadjudicated.

Upon information and belief, Defendant Brock & Scott, PLLC and Defendant McMichael Taylor & Gray, LLC share a common registered agent in the State of Florida, namely CT Corporation System, 1200 South Pine Island Road, Plantation, Florida 33324. This overlap is not incidental; it reflects a coordinated legal and administrative presence across multiple states, including Maryland and Florida, where both firms have participated in litigation against the Plaintiff. The shared agent supports the inference that these law firms operate in commercial alignment and may be acting in concert as part of a broader enterprise. In both states, Plaintiff experienced materially similar procedural misconduct: attorneys who had been formally discharged continued to remain on the docket, receive filings, and insert themselves into the litigation process. These attorneys continued sending Plaintiff filings via email, despite repeated notice of termination. However, Plaintiff refrained from opening or responding to these communications to

avoid inadvertently reestablishing an attorney-client relationship—a tactic which these firms appeared to exploit by creating the illusion of proper service while excluding Plaintiff from official court communications.

This deliberate circumvention of proper notice and obstruction of due process demonstrates a coordinated multistate pattern of conduct designed to suppress trust ownership and deprive Plaintiff of her property rights, in violation of 18 U.S.C. § 1962.

## IV. COUNT I – PATTERN OF RACKETEERING ACTIVITY AND CIVIL RICO VIOLATION (18 U.S.C. § 1962(c))

Plaintiff further alleges that Defendants Arvest Bank, Arvest Mortgage, and Truist Bank engaged in racketeering conduct by retaining Brock & Scott, PLLC to act as asset seizure counsel, despite having received certified notice of trust ownership and the death of the borrowers. Acting as legal enforcers within a coordinated enterprise, Brock & Scott submitted false and misleading filings, evaded service requirements, and facilitated the unlawful transfer of trust-owned property without jurisdiction or standing. This conduct constitutes a pattern of activity under 18 U.S.C. § 1961(1) and § 1962(c), including mail and wire fraud and deprivation of rights under color of law.

Plaintiff incorporates all preceding paragraphs and alleges that Defendants have engaged in a pattern of racketeering activity involving mail fraud, wire fraud, obstruction of justice, and deprivation of property rights under color of law. The described conduct satisfies the elements of racketeering activity under 18 U.S.C. § 1962(c), including predicate acts of mail and wire fraud, and that liability under this section does not require personal commission of all acts but participation in a pattern of criminal conduct. See H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239–240 (1989) (holding that racketeering activity is established by a pattern of criminal acts and continuity); see also Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 495–97 (1985) (confirming that civil RICO liability arises from participation in the conduct of an enterprise's affairs through a pattern of racketeering activity). These acts, taken together, constitute a coordinated scheme to unlawfully seize trust-owned real property through abuse of judicial processes across state lines. The actions include falsified or unauthorized filings, concealment of trust ownership, and the use of court systems to execute transfers of property without standing, jurisdiction, or lawful title.

## V. COUNT II – CONSPIRACY TO COMMIT RACKETEERING (18 U.S.C. § 1962(d))

Plaintiff further alleges that Defendants Arvest Bank, Arvest Mortgage, and Truist Bank knowingly conspired with Brock & Scott, PLLC to deprive Plaintiff of her property rights through extrajudicial means that this agreement and coordinated conduct fall squarely within the scope of 18 U.S.C. § 1962(d), which prohibits conspiracies to violate RICO, and are supported by legal precedent establishing that a defendant may be liable for conspiracy even where they did not personally commit each predicate act. See Salinas v. United States, 522 U.S. 52, 63–65 (1997) (holding that a RICO conspiracy does not require personal commission of predicate acts, only agreement to facilitate the enterprise); see also United States v. Turkette, 452 U.S. 576, 583

(1981) (affirming the scope of RICO conspiracies to include both legal and illegal conduct performed in furtherance of an enterprise). Despite receiving certified notice of the KLH Revocable Living Trust and the deaths of the borrowers, these financial institutions retained Brock & Scott as legal agents to execute judicial takings and suppress trust ownership. This agreement and coordinated course of conduct demonstrate knowing participation in a broader racketeering enterprise and further evidence the shared intent to violate Plaintiff's constitutional and statutory rights under federal law.

Plaintiff alleges that Defendants conspired to participate in the racketeering enterprise described above. Each Defendant knowingly agreed to facilitate or further the enterprise's goals through illegal means, including the execution of judicial property sales based on false pretenses, suppression of notice to the true party in interest, and misdirection of surplus funds. This conspiracy is evidenced by coordinated filings, patterns of procedural abuse, and shared objectives across multiple law firms and financial institutions.

## VI. COUNT III – DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS UNDER COLOR OF LAW

Plaintiff alleges that Defendants, acting under color of state law, deprived her and the KLH Revocable Living Trust of property without due process of law in violation of the Fourteenth Amendment acted under color of state law in a manner that deprived her of constitutionally protected property interests. The legal foundation for this count is 42 U.S.C. § 1983, which provides a federal remedy for individuals whose rights, privileges, or immunities secured by the Constitution have been violated by persons acting under color of state law. The U.S. Supreme Court has long recognized that due process protections attach to property interests, and that procedural due process requires fair notice and an opportunity to be heard before deprivation occurs. See Board of Regents v. Roth, 408 U.S. 564, 569–70 (1972); see also Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (outlining the balancing test used to determine what process is due). Judicial property transfers and surplus fund distributions were carried out without proper notice to the trust, while motions challenging jurisdiction were ignored or denied based on non-substantive grounds. These acts constitute a clear violation of constitutional protections guaranteed under 42 U.S.C. § 1983 and further demonstrate abuse of authority under state legal mechanisms.

## VII. COUNT IV – FRAUDULENT INVOCATION OF DEED OF TRUST AS LEGAL AUTHORITY FOR JUDICIAL SALE

Plaintiff incorporates by reference all preceding paragraphs and alleges as follows:Plaintiff asserts that this count is supported by established legal precedent recognizing fraud on the court as a basis for independent federal relief and equitable intervention. The U.S. Supreme Court has emphasized that fraud which prevents a party from fairly presenting their case undermines the integrity of the judicial process. See Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 246 (1944) (recognizing fraud on the court as a basis to set aside judgments); see also Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991) (acknowledging the court's inherent power to address fraud and abuse of process).

A key mechanism by which Defendants executed unlawful judicial sales and deprived Plaintiff of due process was the fraudulent invocation of deeds of trust that were no longer valid or enforceable. In multiple jurisdictions, including Prince George's County and Montgomery County, Maryland, the underlying deeds of trust were used as the legal foundation to prosecute judicial property sales—despite the fact that the properties had been lawfully transferred into the KLH Revocable Living Trust, and the original obligors were deceased.

Despite full knowledge of these changes in ownership and party status, Defendants—including attorneys purporting to represent creditor interests, substitute trustees, and financial institutions—continued to submit documents and court filings predicated upon those deeds of trust that had become legally obsolete. These documents falsely implied that the deceased individuals remained legally responsible parties and that the original security instruments remained intact and enforceable. In doing so, Defendants knowingly misrepresented their legal authority to the courts, misleading judges into granting orders that enabled judicial takings without proper standing or jurisdiction.

The invocation of deeds of trust under these circumstances—where no current debt obligation existed against the named borrower, and where the property title had lawfully passed to a living trust—constitutes fraud upon the court, constructive fraud, and abuse of legal process under color of law. It further supports Plaintiff's assertion that these actions were not mere oversights or technical errors, but deliberate racketeering conduct intended to mislead courts, seize property, and defraud the trust.

## VIII. COUNT V – JUDICIAL FACILITATION OF RACKETEERING AND DUE PROCESS VIOLATIONS

Plaintiff asserts that judicial officers who act in a manner that knowingly enables fraud or refuses to address jurisdictional defects after being made aware of them may give rise to liability in circumstances where their actions fall outside the scope of judicial immunity. See Forrester v. White, 484 U.S. 219, 227–229 (1988) (distinguishing judicial acts from administrative or prosecutorial actions not shielded by absolute immunity); see also Dennis v. Sparks, 449 U.S. 24, 28–29 (1980) (holding that judges acting in conspiracy with private actors are not immune from suit under § 1983).Plaintiff notes with concern that several materially biased communications were issued by the judicial assistant to Judge Edward Nicholas in Manatee County, Florida, which suggest potential influence over procedural outcomes. While Plaintiff does not currently assert formal claims against the assistant, the tone and content of these communications—coupled with the unexplained denials of jurisdiction-based motions—raise serious concerns about whether decisions were issued by the judge or intermediated by judicial staff. Plaintiff reserves the right to amend this Complaint if further evidence confirms improper delegation, interference with judicial review, or extrajudicial influence on case outcomes.

Plaintiff further alleges that certain judicial officers acted in a manner that enabled and facilitated the racketeering conduct by refusing to address jurisdictional defects, by denying motions on irrelevant or unsupported grounds, and by failing to take corrective action after being made

aware of misconduct. These omissions and rulings, when viewed in the context of a coordinated enterprise, reflect active judicial facilitation of the racketeering enterprise.

## IX. COUNT VI – MULTISTATE PATTERN AND GOVERNMENTAL INDIFFERENCE

Plaintiff further asserts that the systemic inaction by government agencies in the face of documented constitutional violations and certified notice constitutes deliberate indifference and state neglect. The failure of public officials to act in response to known rights violations has been recognized by courts as a basis for § 1983 liability where such omissions effectively support ongoing harm. See DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 203 (1989) (government inaction may violate due process where it creates or sustains harm through state involvement); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690–91 (1978) (recognizing municipal liability for policies or customs that result in constitutional violations).

Plaintiff incorporates all preceding paragraphs and alleges that the racketeering conduct described herein spans multiple jurisdictions and was met with silence or indifference by government officials and agencies despite documented notice. Plaintiff mailed notice packages with green card confirmations to governors, attorneys general, and other officials in Maryland and Florida. Despite full documentation and verified delivery, these agencies took no action to intervene or investigate.

This institutional inaction enabled Defendants to continue litigating in the name of deceased individuals, ignore trust ownership, and manipulate judicial processes to execute property takings without legal standing. Such systemic failures across state lines provide further evidence of an enterprise operating under color of law to dispossess individuals of property through unlawful means.

As a direct and proximate result of Defendants' coordinated acts of fraud, obstruction, and suppression of trust ownership, Plaintiff suffered irreparable harm including the loss of lawfully held real property, denial of due process, emotional trauma, and financial hardship. These injuries were not incidental but were the foreseeable and intended outcomes of the racketeering enterprise.

## X. PRAYER FOR RELIEF

Plaintiff respectfully requests the following:

- A declaration that Defendants engaged in a pattern of racketeering activity in violation of 18 U.S.C. §§ 1962(c) and (d);

- Equitable relief restoring trust-held ownership and voiding any legal or financial consequences resulting from judicial property transfers executed without jurisdiction or proper party notice;

- Injunctive relief barring further action against the property without court-verified standing;

- Referral to the Department of Justice for criminal prosecution under 18 U.S.C. §§ 1341, 1343, 1956, and 1962;

- Referral to disciplinary authorities for suspension or revocation of licenses of attorneys, officers of the court, or judicial staff—including judicial assistants—who knowingly violated Plaintiff's rights or participated in procedural misconduct;

- Monetary damages, including treble damages, for injuries sustained;

- Attorney's fees, court costs, and reasonable expenses under 18 U.S.C. § 1964(c);

- Any other relief the Court deems just and proper.

- Plaintiff reserves the right to notify non-defendant actors referenced herein of the existence of this complaint and its filing in federal court.

**Respectfully submitted,**

*Kristine Lee: Hardwick-Lewis, Trustee   May 22, 2025*

Kristine Lee Hardwick-Lewis
Trustee, KLH Revocable Living Trust
All Rights Reserved Without Prejudice
UCC 1-608
P.O. Box 110235
Bradenton, Florida 34211
941-322-4082
kllewis13@gmail.com
Plaintiff reserves the right to retain legal counsel and to amend or supplement this Complaint accordingly.